Eugene STERN, by June Mohr, Guardian, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF HEALTH AND FAMILY SERVICES, Respondent-Respondent.

Court of Appeals

*No. 96–2381. Submitted on briefs June 5, 1997.—Decided July 16, 1997.*

(Also reported in 569 N.W.2d 79.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Karyn L. Rotker* and *Jeffery R. Myer* of Legal Action of Wisconsin.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle,* Attorney General, and *Kathleen M. Falk,* Assistant Attorney General.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J. Eugene Stern, by his guardian, June Mohr, appeals the trial court's denial of his request for reasonable attorney's fees under the Wisconsin Equal Access to Justice Act, § 814.245, STATS. We conclude that both the prelitigation and litigation position of the Department of Health and Family Services[1] (DHFS) in its attempt to terminate Stern's medical assistance benefits (MA) was *not* substantially justified and was, simply put, unconscionable. The trial court's finding to the contrary constitutes an erroneous exercise of discretion; we therefore reverse.

Since 1989, Stern has been living in a nursing home. He also received MA from November 10, 1989, through December 31, 1992, and from February 12, 1993, when he reestablished eligibility. On November

---

[1] The Department of Health and Family Services was previously, and at the time of this action, called the Department of Health and Social Services. Nevertheless, we will utilize DHFS.

13, 1992, Stern received a written notice terminating his MA effective December 1, 1992, in anticipation of a December 1 closing on the sale of a vacant parcel of land Stern owned with his wife, Emma.[2] However, the closing did not occur until December 21. On December 29, Mohr was orally advised that Stern's MA would continue through December 31. Stern's MA was terminated on December 31, 1992.

On February 8, 1993, Stern was provided written notice that his "medical assistance benefits will be stopped effective 12/31/92." On February 12, 1993, Stern reestablished his eligibility for MA. The next day Stern requested a fair hearing on the February 8 termination notice.

The fair hearing was held on April 28, 1993. The hearing examiner dismissed Stern's petition. The examiner concluded that "the Office of Administrative Hearings does not have jurisdiction to decide the merits of the December 31, 1992 discontinuance of MA

---

[2] In fact, the Ozaukee County Department of Social Services (OCDSS), which administers the MA program, told Mohr that in order for Stern to be eligible for MA, the nonhomestead property had to be on the market. At the time of the application, the property which was landlocked was worth $60,000. If the landlocked situation resolved in Stern's favor, it was valued at $120,000. Mohr was subsequently told by OCDSS that she had to reduce the listing price 10 to 20% every six months until the property was sold or Stern's MA would be terminated. Mohr was also misinformed by OCDSS that if the land was quitclaimed to Emma, this would be considered a divestment and would negatively effect Stern's MA eligibility. Thereafter, OCDSS admitted that it mistakenly told Mohr that the property had to be sold—a big loss for Emma—but its position was that "the client was under no responsibility to follow the instruction, correct or incorrect." Such callous disregard of the very people OCDSS is designated to assist is reprehensible.

because the appeal was not timely" and "[t]hat the February 8, 1993 county agency denial of the petitioner's MA application was correct." Stern's petition for rehearing was denied.

Stern next sought review in Ozaukee County Circuit Court pursuant to §§ 227.52 and 227.57, STATS., 1993–94. The circuit court reversed the examiner's decision. The court concluded that because the termination notice was "not timely given in a manner authorized by HSS 102.4(2), notice was ineffective and therefore the agency erred in discontinuing the petitioner's M.A. benefits as of December 31, 1992."

■

As the prevailing party, Stern filed a motion for attorney's fees under § 227.485, STATS., arguing that the agency's position in terminating Stern's MA was not substantially justified. In an order dated May 17, 1996, the court denied Stern's motion finding that the agency's actions were substantially justified under § 814.245, STATS. Stern appeals.

As the prevailing party, Stern argues that he is entitled to an award of costs and fees under the Wisconsin Equal Access to Justice Act (WEAJA), § 814.245, STATS. Section 814.245(3) provides:

> If an individual . . . is the prevailing party in any action by a state agency or in any proceeding for judicial review under s. 227.485(6) and submits a motion for costs under this section, the court shall award costs to the prevailing party, unless the court finds that the state agency was substantially justified in taking its position . . . .

We must review the circuit court's determination on whether the state's position was substantially justified under the erroneous exercise of discretion standard.

*See Sheely v. DHSS*, 150 Wis. 2d 320, 337, 442 N.W.2d 1, 9 (1989).

To establish that its position was substantially justified, the state must demonstrate " '(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.' "[3] *Id.* (quoted source omitted). Neither losing the case nor advancing a novel but credible interpretation of the law constitutes grounds for finding a position lacking in substantial justification. *See id.* at 338, 442 N.W.2d at 9. However, a discretionary decision will not be sustained if it has no basis in " 'the appropriate and applicable law.' " *See id.* at 339, 442 N.W.2d at 10 (quoted source omitted). " 'In evaluating the government's position to determine whether it was substantially justified, we look to the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation.' " *Bracegirdle v. Department of Regulation & Licensing*, 159 Wis. 2d 402, 425, 464 N.W.2d 111, 119 (Ct. App. 1990) (quoted source omitted).

We conclude that the circuit court erroneously exercised its discretion in dismissing Stern's motion for attorney's fees. The circuit court based its decision on the pleadings and the arguments of counsel, and for the

---

[3] DHFS relies on *Behnke v. DHSS*, 146 Wis. 2d 178, 183, 430 N.W.2d 600, 602 (Ct. App. 1988), to equate a substantially justified position with a position that has "arguable merit." However, in *Sheely v. DHSS*, 150 Wis. 2d 320, 338 n.10, 442 N.W.2d 1, 9 (1989), the supreme court rejected the *Behnke* court's "assessment of a reasonable basis in law and fact as being equivalent to 'arguable merit.' " Accordingly, we follow the clearly enunciated three-pronged test outlined in *Sheely*.

reasons stated orally on the record, it found that the agency's actions were substantially justified. In its oral decision the court stated:

> The question is, I guess, whether or not they were substantially justified in the position that the oral extension was effective to extend the written notice. I decided that that wasn't effective.
>
> . . . .
>
> . . . But again, that doesn't equate to whether or not they were substantially justified in their position. The history of it factually is that they were having contact with the guardian for this person, were keeping that person informed of the circumstances surrounding the M.A. benefits. . . . *I mean they had a reasonable basis in argument at least, if not in fact, for the position they took.* As it turned out I decided against them. But again that doesn't mean they weren't substantially justified in the position they took. [Emphasis added.]

However, the circuit court's determination that DHFS "had a reasonable basis in argument at least, if not in fact, for the position they took" fails to address whether DHFS demonstrated all three prongs which define substantially justified conduct and therefore constitutes an erroneous exercise of discretion. Moreover, it is clear from the record that DHFS's position had no reasonable basis in law and it was not substantially justified.

■ The prelitigation position of DHFS was that Stern was provided with more than ten days advance notice of the proposed December 1 discontinuance of benefits; that Stern received verbal notice that the effective date was delayed; "and that at no time was the petitioner or

his representative unaware of what was happening, why or when." This position is untenable. Under both the federal and state rules for MA, which comport with minimal due process requirements, a written notice terminating benefits is *required. Cf.* WIS. ADM. CODE § HFS 102.04(2)[4] (agency shall provide timely written notice containing a statement of action taken, the reasons for and regulations supporting the action and an explanation of the individual's rights) *with Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970) (procedural due process requires that welfare recipients have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting adverse witnesses and by presenting their own arguments and evidence orally). Clearly, DHFS's action failed to meet the minimum due process requirements.

Moreover, DHFS's position is contrary to its own rules. Before terminating MA, "[t]he agency shall give the recipient timely advance notice [at least ten calendar days before the effective date] and explanation of the agency's intention to terminate MA." WIS. ADM. CODE § HFS 103.09(4). It is elementary that an agency must follow its own rules made in conformity with an enabling statute. *See State ex rel. Anderson-El v. Shade*, 181 Wis. 2d 348, 353, 510 N.W.2d 805, 807 (Ct. App. 1993). The administrative rules do not permit oral modification or verbal delay of the effective date for terminating MA benefits. The sending of a written notice, dated February 8, 1993, retroactively terminat-

---

[4] Chapters HSS 101 through 108 were renumbered HFS 101 through 108 under § 13.93, STATS. We will utilize the HFS designation to be consistent with the caption.

ing benefits effective December 31, 1992, does not comply with the rules.

Furthermore, the November 13, 1992 termination notice was also defective. WISCONSIN ADM. CODE § HFS 103.09(1) specifically requires that "[w]hen eligibility ends, except in the case of death of the recipient, the MA benefits *shall continue until* the end of the calendar month." The November 13 notice gave December 1, 1992, as the day of termination of benefits. Accordingly, this notice also fails to comport with the rules administering MA. It is simply unreasonable for DHFS to persist with its theory of verbal modification of the effective date when the theory directly contradicts its very own rules. For DHFS to continue with this theory through two circuit court reviews and this appeal does not miraculously legitimize DHFS's previous course of action; rather, its position through appeal is not substantially justified either.

This court is equally disturbed by DHFS's handling of Stern's appeal filed after the February 8 termination notice.[5] The hearing examiner dismissed the appeal on the grounds that the agency did not have

_____

[5] Understandably, DHFS argues on appeal that the hearing examiner's dismissal of Stern's appeal is not an issue before this court. To the contrary, when determining whether the agency's position was substantially justified, " 'we look to the record of both the underlying government conduct at issue and the totality of the circumstances present before and during litigation.' " *Bracegirdle v. Department of Regulation & Licensing*, 159 Wis. 2d 402, 425, 464 N.W.2d 111, 119 (Ct. App. 1990) (quoted source omitted). The agency's unfounded denial of benefits and its refusal to conduct a rehearing prolonged the litigation and forced Stern to turn to the courts for relief. Certainly, it is relevant to whether the agency's actions were substantially justified.

jurisdiction to decide the merits of the December 31, 1992 discontinuance of MA because the appeal was filed more than forty-five days after the discontinuance and "the February 8, 1993 county agency denial of the petitioner's MA application was correct." This conclusion does not have a reasonable basis in law or fact and is therefore not substantially justified.

The examiner's first conclusion is based on its finding that verbal notice was sufficient to delay the effective date of the termination. As we previously discussed, such a conclusion is contrary to DHFS's own rules and is therefore indefensible.

More disturbing is the examiner's second conclusion that the February 8, 1993 notice of termination of benefits constituted a denial of Stern's MA application. The February 8 negative notice specifically states: "Your medical assistance benefits will be stopped effective 12/31/92." Obviously, if this notice was intended to be a denial of an application it would have indicated as much in the appropriate space. Since Stern did not submit his application for MA until February 12, 1993, the examiner's conclusion is simply unsupportable in truth. Needless to say, it was not substantially justified. Again, for the agency to persist with this theory in two circuit court reviews is not substantially justified either.

■

During the ch. 227, STATS., review of DHFS's action, the circuit court correctly held that DHFS was wrong in terminating Stern's benefits. Based on the state of the record, we fail to understand on what basis the circuit court could then hold that Stern was not entitled to reasonable attorney's fees. DHFS failed to demonstrate a reasonable basis in truth for the termination of Stern's benefits—written notice was not

provided and the February 8 "application denial" was a notice of termination of benefits. Moreover, DHFS failed to demonstrate a reasonable basis in law for its theory in support of termination—verbal notice was insufficient and appeal was timely. The total lack of factual and legal basis for DHFS's position supports an award of attorney's fees under § 814.245, STATS., and we reverse the circuit court's erroneous finding to the contrary.

Accordingly, Stern is entitled to an award of costs, including reasonable attorney's fees, flowing from all administrative hearings, the ch. 227, STATS., judicial review, the trial court proceedings on the request for attorney's fees and this appeal. *See Sheely*, 150 Wis. 2d at 339–40, 442 N.W.2d at 10. Attorney's fees may not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor justifies a higher fee.[6] *See* § 814.245(5)(a)2, STATS. "[T]he movant bears the burden of producing satisfactory evidence of the prevailing market rate for the kind and quality of services rendered." *Wonders v. Shalala*, 822 F. Supp. 1345, 1348 (E.D. Wis. 1993).[7]

---

[6] Stern is not entitled to the use of a multiplier to enhance the award of reasonable attorney's fees because of either a contingency factor or the quality of counsel's performance. This action was not brought under a federal civil rights law which, in some cases, permits the enhancement of the attorney fee award; the WEAJA permits only the award of reasonable attorney's fees which have acquired a precise meaning that does not include the use of a fee multiplier. *See Board of Regents v. Wisconsin Personnel Comm'n*, 147 Wis. 2d 406, 410–16, 433 N.W.2d 273, 276–78 (Ct. App. 1988).

[7] Our interpretation of § 814.245, STATS., is guided by federal case law interpreting substantially similar provisions of

" 'One of the purposes of the EAJA [and the WEAJA] is to encourage challenges to agency action and to provide a disincentive to agencies to prolong the litigation process; and that awarding higher, fully compensatory, fees would better serve these statutory purposes than lesser awards.' " *Id.* (quoting *Dewalt v. Sullivan,* 963 F.2d 27, 29 (3rd Cir. 1992)). In keeping with this purpose, courts may include cost of living increases since 1981. *See Hanrahan v. Shalala,* 831 F. Supp. 1440, 1451 (E.D. Wis. 1993). When cost of living increases are supported by the record, adjustments should be based on the "All Items" component of the Consumer Price Index (CPI-AI). *See id.; see also Wonders,* 822 F. Supp. at 1347–48. The figures are derived from the percentage change in the CPI-AI since 1981 which can be obtained from the Bureau of Labor Statistics. *See Wonders,* 822 F. Supp. at 1349 n.5. If the circuit court determines that an increase in the cost of living based on the CPI-AI justifies a higher fee, then it should look to these sources for the maximum hourly rate awardable under the WEAJA.

*By the Court.*—Order reversed and cause remanded with directions.

---

---

the federal Equal Access to Justice Act. *See* § 814.245(1); *see also Sheely,* 150 Wis. 2d at 328, 442 N.W.2d at 5.